UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
UNITED STATES OF AMERICA,           )
                                    )
    v.                              )    Crim. No. 09-0226 (PLF)
                                    )
TED GIOVANNY LOZA,                  )
                                    )
        Defendant.                  )
_____)

MEMORANDUM OPINION AND ORDER

This matter is before the Court on defendant Ted Giovanny Loza's Motion for a Hearing to Determine the Admissibility of Co-Conspirator Statements, the defendant's opposition, and the government's reply; and on the government's Motion *in Limine* Regarding Admissibility of Co-Conspirator Statements. The Court heard oral argument on the motions on February 1, 2011. Upon consideration of the parties' arguments, the relevant legal authorities, and the record in this case, the Court will deny the defendant's motion for a pretrial hearing and defer decision on the government's motion *in limine*.

I. BACKGROUND

*A. The Indictment*

The second superseding indictment, returned on January 25, 2011, alleges that between 2007 and 2009, a group of individuals conspired to gain a dominant position in the District of Columbia taxicab industry by improperly influencing the legislative and executive branches of the District of Columbia government. See Second Superseding Indictment ("2d Sup. Ind.") ¶¶ 6-13. Specifically, it alleges that Abdul Kamus, Yibarek Syume, and certain unnamed

co-conspirators ("the Kamus co-conspirators") planned to take advantage of the institution in October 2007 of a new meter system that would be used to determine the rates paid to taxi drivers in the District. See id. ¶ 6. This shift to a meter system "was widely anticipated . . . [to] lead to . . . stringent limitations on the total number of taxicabs licensed to do business in the District of Columbia." Id. According to the indictment, the Kamus co-conspirators developed a two-pronged plan intended to allow them to acquire a large number of valuable taxicab licenses while limiting the number of licenses available to competitors. First, the Kamus co-conspirators would pay a large bribe to the chair of the District of Columbia Taxicab Commission ("DCTC") in exchange for his "agreement to issue numerous multi-vehicle taxicab company licenses" to the co-conspirators and their affiliates. Id. ¶ 7. Then the co-conspirators would arrange for the Council of the District of Columbia to pass legislation instituting a moratorium on the issuance of new taxicab licenses ("the moratorium legislation"), thus restricting the supply of licenses and making existing licenses more valuable. Id. ¶ 8.[1] For ease of reference, the Court will call these two steps in the alleged conspiracy "the DCTC prong" and "the legislative prong," respectively.

Based upon the allegations contained in the second superseding indictment, it appears that the government's case against Mr. Loza focuses primarily on the legislative prong of the conspiracy. The government alleges that the Kamus co-conspirators targeted Mr. Loza — at the relevant times the chief of staff of a member of the Council of the District of Columbia — as a District official who could help them achieve their legislative goals. Mr. Loza allegedly

---

[1] The government also alleges that, after securing passage of the moratorium legislation, the Kamus co-conspirators intended to push for the passage of further legislation that would create an exception to the moratorium for licenses issued to "companies using low-emission of 'hybrid' vehicles." 2d Sup. Ind. ¶ 8. The indictment does not make clear the manner in which this second round of legislation was meant to benefit the conspirators.

accepted a variety of "things of value" from the Kamus co-conspirators and, in exchange, assisted in securing the passage of the moratorium legislation. 2d Sup. Ind. ¶¶ 8-11. The government charges that, in doing so, Mr. Loza entered into a conspiracy whose goals included (1) "corruptly obtain[ing] taxicab company licenses and influenc[ing] legislation, thereby assisting the Co-Conspirators in controlling and dominating the taxicab industry in the District of Columbia," and (2) "enrich[ing] LOZA by corruptly offering and receiving bribes to influence him in the performance of his official acts." Id. ¶ 13. The indictment thus alleges that Mr. Loza was a member of both prongs of the conspiracy — the bribery of the chair of the DCTC in exchange for the issuance of licenses, and the bribery of Mr. Loza himself in exchange for his efforts to secure passage of desired legislation — even though most of the overt acts allegedly taken by Mr. Loza appear to concern only the legislative prong.

### B. Statements of Other Participants

The indictment describes two instances in which a Kamus co-conspirator allegedly made a statement that, according to Mr. Loza, could have been made in furtherance of the DCTC prong, but not the legislative prong, of the overarching conspiracy. First, according to the indictment, "[o]n or about October 24, 2007, Kamus, Syume, and [a co-conspirator] met with [the chair of the DCTC]; during the meeting, Kamus stated that the Co-Conspirators intended to offer a trip to Ethiopia to [Mr. Loza's employer, a member of the Council of the District of Columbia] in exchange for his support of [moratorium] legislation." 2d Sup. Ind. ¶ 15(3). Second, the indictment further alleges that "[o]n or about January 24, 2008, [a Kamus co-conspirator] met with [the DCTC chair]; [the Kamus co-conspirator] stated that the Co-

3

Conspirators were providing a trip to Ethiopia to [Mr. Loza's employer]." Id. ¶ 15(17). Mr. Loza argues that the government may not — as it presumably intends to — offer evidence of these statements against him at trial because they are inadmissible hearsay. See Motion for a Hearing to Determine the Admissibility of Co-Conspirator Statements ("Mot.") at 4-5. He requests a pretrial hearing to determine the admissibility of these and numerous other asserted co-conspirator statements the government seeks to offer. Id. at 8. The government has filed an opposition to Mr. Loza's motion, and has also filed a motion *in limine* requesting that "the Court admit certain statements" — namely, *any statements* made by alleged co-conspirators of Mr. Loza, presumably regardless of which prong of the conspiracy they implicate. Government's Motion *in Limine* Regarding Admissibility of Co-Conspirator Statements ("Gov.'s Mot.") at 1; see also id. at 4.

## II. DISCUSSION

The government contends that the two statements identified by Mr. Loza are not hearsay because they were made by co-conspirators of Mr. Loza to further the progress of their conspiracy. Gov.'s Mot. at 4-5. "A statement is not hearsay if . . . it is offered against a party and is . . . a statement by a coconspirator of a party during the course and in furtherance of the conspiracy." Fed. R. Evid. 801(d)(2)(E). In order to rule that a statement is admissible under Rule 801(d)(2)(E), a "district court must find by a preponderance of the evidence that a conspiracy existed and that the defendant and declarant were members of that conspiracy." United States v. Brockenborrugh, 575 F.3d 726, 735 (D.C. Cir. 2009) (citation and internal quotation marks omitted). The court must also find that the statement in question was "made in

furtherance of the common goal" of the conspiracy.  United States v. Gewin, 471 F.3d 197, 201 (D.C. Cir. 2006) (citation and internal quotation marks omitted).  Any finding by the court that the requirements of Rule 801(d)(2)(E) are met must be based at least in part "on some independent evidence of the conspiracy" — that is, on evidence other than the statements whose admissibility is in question.  Id.

Although the necessary factual findings relevant to admissibility must be made by the court before a statement may be admitted unconditionally in evidence pursuant to Rule 801(d)(2)(E), see United States v. Jackson, 627 F.2d 1198, 1218 (D.C. Cir. 1980), those findings need not be made before the government presents its evidence to the jury.  See id.  Instead, the challenged statement or statements may be provisionally admitted in evidence, "subject to connection" — i.e., contingent upon the government's subsequent introduction of sufficient evidence to persuade the court that the requirements of Rule 801(d)(2)(E) have been met.  Id.  If, after the close of the government's case, "or at any other critical point," the court determines that the government has failed to prove the necessary factual predicate for admissibility, the court may either declare a mistrial or strike and instruct the jury to disregard any inadmissible statements.  Id.

The court of appeals has suggested in the past that it is "the better practice" for the trial court to determine the admissibility of statements offered pursuant to Rule 801(d)(2)(E) before the statements are presented to the jury.  See United States v. Jackson, 627 F.2d at 1218.  Nevertheless, the court of appeals acknowledged in the same opinion that "it is just impractical in many cases for a court to comply strictly with the preferred order of a proof," and as a consequence, "the court is vested with considerable discretion to admit particular items of

evidence 'subject to connection.'" Id. (citation omitted). In this district it is common practice for a court to avoid a "disfavored 'mini-trial' of the evidence" by deferring its determination regarding the admissibility of alleged co-conspirator statements until after the close of the government's case. United States v. Cooper, 91 F. Supp. 2d 60, 78 (D.D.C. 2000) (declining to hold a pretrial evidentiary hearing on this issue); see also United States v. Brockenborrugh, 575 F.3d at 735 (noting that the district court in that case had "provisionally admitted . . . testimony subject to proof of a conspiracy under Federal Rule of Evidence 801(d)(2)(E)"); United States v. Hsin-Yung, 97 F. Supp. 2d 24, 37 (D.D.C. 2000) (rejecting a request for a pretrial hearing on admissibility of co-conspirator statements because "having a pretrial hearing essentially would create a time-consuming mini-trial before the trial").

Mr. Loza contends that a pretrial hearing on admissibility is necessary in this case because the government "intends to introduce significant amounts of co-conspirator statements that were only made in furtherance" of the DCTC prong of the overarching conspiracy alleged in the indictment, and the government cannot show that Mr. Loza was involved in the DCTC prong. Defendant's Reply in Support of Mot. ("Mot. Reply") at 8. In other words, Mr. Loza suggests that the indictment actually may allege either one conspiracy with two prongs, or three conspiracies: the DCTC prong, the legislative prong, and the larger conspiracy encompassing both prongs.[2] He maintains that the government's allegations link him only to the legislative

---

[2] Mr. Loza initially argued that there were two separate conspiracies, and that only one — the legislative conspiracy — was charged in the indictment. See Mot. at 6. The government undercut this argument by alleging specifically in the second superseding indictment that Mr. Loza was a member of both the DCTC and the legislative prongs of one overarching conspiracy. See 2d Sup. Ind. ¶ 13. Mr. Loza continues to maintain that the jury must decide whether the indictment charges one or two conspiracies, but — at least for the purposes of this motion — acknowledges that the grand jury has found a single conspiracy with two prongs.

6

prong/conspiracy, and not the DCTC prong or the overarching conspiracy. See id. He asserts that if the government cannot produce evidence linking him to the DCTC conspiracy or the overarching conspiracy, statements made in furtherance of those conspiracies, but not in furtherance of the legislative prong, should not be admitted against him.

The Court does not agree with Mr. Loza's argument that a pretrial hearing is appropriate in this case. The second superseding indictment alleges, and the government has proffered in its motion papers, that Mr. Loza sought to become actively involved in United Fleet Management, a corporation formed by the Kamus co-conspirators for the purpose of "hold[ing and using] the taxicab company licenses they obtained" pursuant to the DCTC prong of the conspiracy. Id. ¶ 10; see Gov.'s Mot. at 2-3. If the government is able to present evidence to substantiate its claims — as it asserts that it will — there is a substantial likelihood that the requirements of Rule 801(d)(2)(E) will be met as to any co-conspirator statements made in furtherance of either prong of the overarching conspiracy. At the same time, the Court finds that a pretrial hearing held to establish Mr. Loza's connection to the DCTC prong would likely be time-consuming and highly duplicative of testimony to be presented during the government's case-in-chief at trial. Furthermore, according to the representations made during oral argument on this motion, the government is confident that it will meet its burden of proving admissibility and is willing to assume the risk that its failure to do so could lead to a mistrial. In light of these considerations, the Court believes that a pretrial hearing is neither necessary nor appropriate. Accordingly, it is hereby

ORDERED that [31] Defendant's Motion for a Hearing to Determine the Admissibility of Co-Conspirator Statements is DENIED; and it is

FURTHER ORDERED that a decision on [54] the Government's Motion *in Limine* Regarding Admissibility of Co-Conspirator Statements is DEFERRED. The Court will admit the statements in question provisionally, subject to connection. Once the government has presented its case-in-chief, or at any other appropriate time during or after the presentation of evidence at trial, the Court will make a final determination regarding the admissibility of those statements proffered as the statements of co-conspirators.

SO ORDERED.

/s/_____
PAUL L. FRIEDMAN
United States District Court

DATE: February 4, 2011